If you haven't issues please call the next case. Keyed 16-041-3-0 Garry Destri v. Chiarizier Mark Wilson May it please the Court, Counsel. My name is Mark Wilson. I represent the plaintiff in this case, Garry Destri. It's our position that the commission's failure to find an accident causal connection is against the manifest way of the evidence. Now, the work accident question is based upon work activities that the petitioner performed for the respondent that resulted in him having blood in his urine and ultimately required him to undergo an outlation procedure. The work in question took place from November 5, 2011 to November 18, 2011. The work performed consisted of pressure washing, painting, filling water tanks, carrying fuel tanks weighing 50 pounds, and maneuvering a hose that was comparable to a firehouse hose. Now, all of these work activities were done at a fast pace and were also done in thick mud. Now, what was important is that the respondent owner, Chad Vendermersch, he testified at the arbitration hearing and agreed that the petitioner performed all these activities. He also agreed that the mud that the petitioner was working in was so thick that the work trucks would get stuck in it. Now, it's our position that this work that the petitioner performed for the respondent under these conditions exposed him to a risk to a greater degree than the general public, and as such, the resulting injury to the petitioner should be considered to have arisen out of the employment. And in support of this, in my brief, I cited the arm accolade case. Now, as to causal connection, it is true that the petitioner had had blood in his urine three years before, so it would have been back in March of 2008. But what was interesting about that, however, was that those problems that he developed back then in 2008, they were when he was performing the same type of work for the very same respondent. Now, after he received that treatment in March of 2008, he had no such problems with blood in his urine, urine, no symptoms at all, from March 28, 2008 up until November of 2011 when he started working, doing this type of work again. Now, Dr. Schwartz is the urologist who treated the petitioner back in 2008, and he also treated him after this November 2011 injury. And in his evidence deposition, Dr. Schwartz testified that the petitioner had an enlarged prostate and that the work activity that he performed for the respondent exacerbated this condition, necessitating the outpatient procedure that he performed. Now, what I thought was also important here as far as causal connection is respondent's section 12 examiner, Dr. Sohn, he agreed that the work activities consisting of the lifting, the stringing out the heavy hoses, and walking in his mud can cause an aggravation of the petitioner's preexisting condition. And it seemed that his position that he was taking on it was that the petitioner was under such a fragile state that any trauma evens that I think a bowel movement, for instance, could have caused these conditions. Do you claim to have a long history of prostatitis? It's, I believe that the records indicated that he had had some symptoms going back several years, but that there was nothing from that period from March of 2008 up until he... So what was Sohn's final conclusion? He contradicted Schwartz, didn't he? He, actually the gist of his opinion was that he agreed upon the treatment provided, that it was reasonable and appropriate, he just thought that any type, anything could have caused... Any type of normal daily activity would cause it? Yes, for instance, going to, having a bowel movement, for instance, that that could have caused it. But my... So what's wrong with that? Why does that make sense? Well, I think he's under the mistaken impression that the petitioner's condition was so fragile when he started this job that anything would cause it, when in reality there wasn't anything from March of 2008 until he started doing this work in November of 2011. Now when this, the day that this allegedly happened, did the claimant ever fill out an accident report? I don't believe that he did. He did, Vander Merce, the owner, he acknowledged that he did, you know, call and say that he had the blood in his urine and that was, you know, so from that standpoint we believe that notice was given. But in the past, didn't the claimant allegedly fill out accident reports when he was injured before? Well, back in November of, I'm sorry, March of 2008, he didn't claim that, he didn't pursue a work-related case for that particular... That he had in the past at some point. I believe that's true, Your Honor. And the commission was troubled by that, were they not? I believe two of the commissioners were the one who was a dissenting commissioner that thought that there was an accident causal relationship. So then specifically why is the commission's finding against the man in this way of the evidence? It's because the, well, as far as the accident is concerned, even the respondent's own witness acknowledged that the type of work that he did and that that work did, it's our position that that put him at a greater risk than the general public performing that type of work. So I think that it is clear that as to accident, that it should be reversed. What was Schwartz's opinion? Dr. Schwartz, he testified that the type of work that he did would aggregate his pre-existing condition to cause the bleeding and to necessitate the procedure that was ultimately performed. Well, he went further than that. He said, the claim has been very firm in his belief that the work that causes bleeding, and this has been reported over and over in the office to me, that straining, pushing, lifting, and heavy work created it. In periods of being off work, you would not have these periods of bleeding. So I believe that patients with a large prostate and abnormal blood vessels development, the straining, lifting, pushing creates bleeding, and I do believe that the bleeding that he experienced was related to the work that he did. Was there a contrary opinion somewhere in the record? No. No, you're wrong. Someone just said, I don't know, but this stuff could cause it. Maybe it did, maybe it didn't. Right, and one of the things, and I stated this in my reply brief, Dr. Sohn, first of all, it was a record review, so he did not even examine the petition, or he did not have a chance to question him about any symptoms at all, any type of work he was doing that caused this. And Dr. Sohn also was under the mistaken impression that he worked for a lawnmower company. I mean, it literally says that. So he wasn't even aware of the physical nature of the work that he was doing. And assuming this quarterly briefs that reversal as to accident-causal connection, there really is no dispute as to the medical treatment and to the TTD benefits. Mr. Destry was off about four months, but there's no dispute as to whether that was reasonable. As to permanency, Mr. Destry did testify to, at the time of the hearing, he was still experiencing burning with urination, burning sensation with sexual intercourse, cramping, and scrotum pain. And we ask that as to permanency that it be remanded back to the Commission for determination on the proper amount of permanent disability. Thank you. Thank you, Counsel. Counsel, you may respond. Thank you, Your Honor. My name is Carrie Harden-Munro from Wiener McAuliffe on behalf of Vander Gneiss Lawn Services. Counsel. It is the Respondent's position that the Commission was correct and their determinations should not be overturned. It is not against the manifest weight of evidence, and we would argue that an opposite conclusion is not clearly apparent. Let's try and pin down the battle of the medical experts. Sure. Schwartz gave a causal connection opinion, correct? Yes. In favor of the claimant, quite candidly? Yes. Okay. And did Stone contradict that? In essence, no. Dr. Stone, as Counsel correctly pointed out, originally believed that it was lawnmower. During his deposition, he was advised of the issues by Counsel himself, of the actual duties, and his opinion did not change. Any activity, any pressure, a bowel movement, bike, he clearly said that any of this could have caused it. He also said his work could have caused it, too, didn't he? Yes, he did, Your Honor. So you've got Schwartz saying it did cause it, Stone saying, well, anything could cause it, including his work. So why isn't he entitled to benefits? Well, Your Honor, I believe that really came down to the credibility issue of Mr. Destrin himself. Well, what was wrong with Dr. Schwartz? Well, Dr. Schwartz also provided an opinion that, yes, these activities could, and I think that is the whole point of this argument. He said they did. He didn't say they could. He said they did. He did. But the thing is, though, that's not mentioned in those initial treating records, which is an opposite when he initially went to treatment back in March of 2008. Well, when he testified, he said that in this case they did, trying to find the quote. Yeah, he testified. And I do believe that the bleeding that he experienced was related to the work that he did. I will also point out that Dr. Not could be. It was. Correct. Accordingly. He also relied on Destrin's version. He also relied on the fact that Destrin told him that these accidents, that his duties caused that issue at that time. Why are you giving up on Dr. So on so quickly in response to this last question? No, Your Honor. I am not giving up on Dr. Son. I was merely trying to answer his question directly. Well, I mean, isn't he? If this is a conflicting expert's case, what is there about song that supports the commission's decision? Dr. Son was found credible. You don't have to tell us words. Well, Dr. Schwartz kind of went back and forth on his prostate. What do you got? What do you have here with song? Excuse me, Your Honor. What do you have here with your expert song? What do I have against my expert? No, what do you have here? Oh, here. Yeah, let's get to it. In your favor. Yeah, come on. Apologize. Take the evidence in your favor. Well, I'll summarize it. He has a condition for three years prior to this incident. Yes. That's right? Yes. He said hematuria in the blood diagnosed. Right? Correct. Okay. And you have Son here. He says, I conclude. I would say long history. In my experience, seen it a lot. And he also. Due to a vascular process. Yes, which is also goes back to prostate issues back to 1999. Yeah, I don't consider it a secondary to his job or working or whatever he did. No. I would say it's chronic. That proceeded and it succeeded his working time and long. And he connected this back, all these intermittent bouts back to 2008. Does that say it all in your position? Yes. Oh, okay. So, I mean. Ultimately. So, if we're looking at that, the commission looks at Son and looks at Swartz, right? Correct. And if they've gone with Swartz, what would you be saying? Go with Son. I mean, now you get back to the point.  I would be going with Swartz. Okay. No. The commission relied on Son's testimony. They looked at his going back and forth between what his initial treatment was saying versus what his next treatment was saying. Dr. Swartz admitted that his records weren't very clear on what was going on in November of 2011. He didn't document that and he admitted this. He is going and basing his opinions on Destry's opinion that this is what caused it. Dr. Swartz admitted that. I don't think Destry's saying this is what caused it. He said, this is what I was doing when it happened. I don't think anybody disputes the fact that the guy had a long history of prostatitis. Do they? Everybody agrees to that. Everybody agrees to that. Now, if a guy has a history of prostatitis and he's going along and then he does some heavy lifting at work and he starts bleeding because of it, is he entitled to benefits? Of course he is, under CISPRO. So, the question becomes then, what did Son actually say? Sloan turned around and said that the bleeding could have been either a coincidence or due to the strain. It could have been caused by a bowel movement, walking, running or any other activity. Correct. But he never said in this that it wasn't related to his job, did he? He just said it could be a whole bunch of things. It could be anything. It could be anything. But Schwartz said what it was. Schwartz says it was related. So now why can't they believe Schwartz? What's wrong with what the claimant told the Schwartz that Schwartz based his decision on? The claimant was not believed by the Commission. If he would have told Dr. Schwartz that he was having issues at work that caused his bleeding, it would have been in the records. It was not in the records and the Commission relied on those records and found those as greater weight than that of Mr. Destry. Mr. Destry also didn't report anything to Mr. Vandersmith despite multiple conversations with him. It was these main points that the Commission basically said, you know, if you can't tell us correctly what's going on, if you can't tell your doctor correctly what's going on, why are we looking at your doctor? Vandersmith admits this man told him on November 11, 2011, that he was going to the doctor because he had blood in his urine, didn't he? Yes. Okay. But at no time did he mention that it had any cause to do with his work duties. He didn't know why he had blood in his urine. He's not a doctor. He can't speculate. Well, Schwartz told him then why he had blood in his urine, didn't he? No, he did not tell him. He said he had blood in his urine because of an enlarged prostate. He did not say he had blood in his urine because of his work duties. Schwartz didn't give a cause of connection? Not until later on. What I'm talking about is when Mr. Vandersmith first learned about this, he heard from Mr. Destry that he had blood in his urine. That's it. He didn't say anything about his work duties. He was more concerned about his job at the point and keeping, you know, making sure everything was done. Mr. Vandersmith did not ask, was this because of your work duties? How is he to know? How is he to understand? We'll pass that. I understand you can point to that. But now we're on to the testimony of the experts. Did Sohn agree with Schwartz's interpretation that the claimant had intermittent bouts of gross hematuria that had been exacerbated with heavy lifting and straining? Did Sohn agree with that? Dr. Sohn agreed that this intermittent bounce went back to 2008. Did he say it was exacerbated with heavy lifting and straining? Didn't Sohn agree with Schwartz to that extent? Any straining, any exacerbating could have exacerbated it. So if you follow the logic that to be recoverable, the injury or condition of ill-being doesn't have to be the sole approximate. It can be a contributing cause. Couldn't he argue that Sohn's testimony actually supports his position? Well, Your Honor, I would take the position that, you know, it's my understanding that we're trying to figure out whether this is, Seesborough applies here. My position here is that it doesn't. But? Seesborough. I'm guessing Seesborough. Seesborough, excuse me, sorry. Seesborough was a different case entirely. You had the absent. You had somebody with diabetes. You had the clear preexisting condition. The doctors credibly testified and the commission found that that doctor credibly testified that it's because of his, it's a peculiar to a diabetic. It was caused by a specific traumatic injury. Traumatic. Now, to me, that definitely shows that it must be some type of trauma. In this case, Dr. Sohn is saying trauma? Anything. Anything. It doesn't need to be a sprained ankle. It doesn't need to be heavy lifting. It doesn't need to be any of this. Anything goes. To me, this is a greater Peoria case. This isn't, it's not like the diabetes case. It's not something where it's a guaranteed specific trauma as peculiar to the diabetics in that case. That would be my difference of opinion between those cases. Okay. So what you're saying, or you think Sohn says, and I'm trying to understand Sohn, is that he has a chronic condition. Correct. Okay. In and about. Yes. In that prostatitis, when the gland expands, the blood vessels also become more prominent and they're likely to burst. Yes. And that this can happen at any time. Any time. Now, if you are working and you are doing something, which is that list of things that could be done to put pressure, which would cause the burst of the blood vessel. And if working and lifting and pulling is one of those things, is that compensable or not? If it happens at work. Well, what do we have here? A time frame where we have show up to work, do a day's work, and then voila, you have this problem. What's wrong with that? Well, Your Honor, I could speculate here that he went and had a bowel movement before he had a bowel movement. Well, that's fine. You can't speculate, can you? No, no. I'm just making the argument on the timeline here. You're saying that if he strains at work, therefore there must be blood in his urine at work. He testified at home. There was blood in his urine. He testified. But it was at home. But my point saying is, the way that, it's my understanding you've ordered the question, that if this is really heavy lifting, that the work that was causing this, he's at work. He uses the bathroom. He wasn't at work. He went home. Now, I don't know the time frame. I can't recall the actual period of when he got home, how many hours he was home, when this happened. What you're saying is you've thrown enough against the wall, so to speak, with Sohn and even Schwartz, I suppose, that there are lots of things that caused this. Okay? It's my understanding that it was. So Schwartz says, I think it was the activities at work. And you're saying it's very ambiguous, that they haven't established a case because there's too many other factors out there that could cause this.  All right. Thank you. Any other questions, Your Honor? No. I don't think there are. Thank you. You may reply. I'll be very brief. Mr. Destry testified that when he got home from work on November 20, 2011, that when he went to urinate, there was blood in his urine. So, I mean, it was something right when he got home. He testified to that, but then he didn't say anything to the employer. Did the appellant ask for reports? Excuse me? Did he fill out an accident report regarding that? No. Again, he. Didn't the employer admit that the man called on the 21st and said, I have to go to the doctor because I have blood in my urine? There's no dispute that the employer knew he had blood in his urine. Even the commission acknowledges that. Correct. The question is, is there any relation of the blood in the urine to his work? And, yes, Commissioner Tyrell did, you know, talk about that notice issue. Let's not talk about a notice. Let's get to cause. I mean, I think Justice Hoffman said this is the issue, is it not? Yes. Okay. And if we have a panoply of other factors that can cause this symptom. Okay. Obviously, prosthesis isn't caused by work. Right. Okay. It's an aging process. Right. And there's all these other things that could have been done. Whose obligation is it to rule out everything but work? Well, something I think is very important is within Dr. Schwartz's deposition, he did. We actually had his office go look to see if there had been any time he had seen him from March of 2008 up until November 20, 2011. And they said that there wasn't any treatment records there. And I think that is a real big deal for the case because that's why I think Dr. Sohn, he was under the impression that this was something that was happening, you know, periodically. Yeah, that's what he says. Right. I think it's important that, you know, it's not true. It's something that there hadn't been any treatment at all for this since March of 2008. And Dr. Sohn even acknowledged in his deposition that he was not aware of any treatment. So I think those are all important points. And also, Mr. Destry and his wife indicated, you know, testified that he was having no such symptoms, you know, in that period going back to March of 2008. But for these reasons, I do believe that the commission's decision with regard to accident causal connection should be reversed and, you know, awards should be made with regard to compensability for medical bills, ATTB, and remanded for permanency. Thank you very much. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. Taken under advisement.